UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HERBERT CALVIN HARRIS, III,

    Plaintiff,

        v.

ROBERT MCDONALD,
Secretary, Department of Veteran Affairs,

    Defendant.

Civil Action No. 17-594 (JEB)

**MEMORANDUM OPINION**

Plaintiff Herbert Harris was a food-service worker at the Department of Veteran Affairs Medical Center here in Washington. He brings this *pro se* action against the VA, alleging that it discriminated against him on the basis of sex and retaliated against him after he complained about the discrimination. Plaintiff further contends that the Equal Employment Opportunity Commission Administrative Judge improperly dismissed his case without a hearing. The Agency has now filed an unopposed Motion for Summary Judgment. After an independent review of the record, the Court finds that there is no genuine issue of material fact and therefore grants the Motion.

**I.    Background**

Because Harris did not file an opposition to the instant Motion, the Court draws the following facts from the record, accepting as true all of Defendant's supported factual assertions. See Fed. R. Civ. P. 56(e)(2); Winston & Strawn, LLP v. McLean, 843 F.3d 503, 509 (D.C. Cir. 2016).

Plaintiff worked as a part-time Wage Grade 1 (WG-1) Food Service Worker for the VA under the supervision of two women, Renea Fortune and Cecilia Magnetti. See Def. MSJ, Exh. 3 (Administrative Record) at 80 (Administrative Judge Decision). WG-1 Food Service Workers are assigned to one of three units, depending on the need: (1) serving line/dining room; (2) dishwashing; or (3) food preparation. Id. at 36 (Position Description). Dishwashing duty — not surprisingly — includes washing pots and pans. Id. The VA also employs WG-2 Food Service Workers, who typically work full time. The job tasks for the two grades overlap substantially, but WG-1 workers differ from higher-grade WG-2 workers in that the former "perform[] routine tasks, with only a basic understanding of sanitation and contamination," while the latter "[are] required to have a working knowledge of sanitation and Infection procedures, and perform tasks with several steps." Id. at 38. A supervisor may, nonetheless, assign a WG-1 "higher graded duties to fill in for employees on leave, to cover vacancies or for cross training purposes." Id. During the relevant timeframe, the VA employed 22 WG-1 food-service workers, consisting of 19 men and 3 women. Id. at 31 (EEO Counselor's Report). Additionally, 10 other men and 1 woman had dishwashing as part of their job descriptions. One woman was unable to wash pots and pans due to a disability. Id. at 32. Collectively, then, 29 men and 3 women carried out dishwashing duties.

On October 17, 2007, Harris spoke with an EEO Counselor to report alleged sex discrimination. According to Plaintiff, his supervisors did not rotate work assignments equitably, leaving the men to wash pots and pans most of the time. Id. at 31. One week later, Harris made an informal complaint about this concern to the Agency's Office of Resolution Management. Id. at 39. He stated that, during his employment, he saw women "wash[] pots and

2

pans [only] 5 to 6 times." Id. In addition, Harris complained that he had to fill in for higher-grade employees when they were out sick, but was not compensated for doing so. Id. at 31.

About one month later, on November 30, Plaintiff lodged a formal complaint against the Agency, which it accepted on December 10. Id. at 40 (Complaint), 79 (AJ Decision). In addition to the sex-discrimination claim, Harris added a claim for retaliation, alleging that, on October 18, 2007, he was assigned "extra work duties during [his] regular scheduled hours." Id. at 39. Plaintiff alleged that the Agency assigned him the extra duties as retaliation for his October 17 EEO Counselor interaction. Specifically, he contended that his contact with the EEOC resulted in "work duties that are different from other employees," including "[c]leaning out the grease room [and being] sent to the nursing home to do cleaning duties." Id. at 40. Harris believes that he was made to clean "while other employees s[a]t around and watch[ed] . . . as punishment for filing a complaint with the EEOC." Compl. at 3.

Following the Agency's investigation of his claims, Harris requested a hearing before an EEOC Administrative Judge. See AR at 116. The case was assigned to an AJ, who issued an order providing a discovery and briefing schedule. After the close of discovery, the Agency filed a Motion for Decision Without a Hearing. Harris did not file an opposition to the Motion, and, on January 14, 2009, the AJ granted the Agency summary judgment. The Agency accepted the AJ's decision and entered its final order on December 13, 2013. Id. at 107-09. (The record does not fully explain why a simple dispute about cleaning duties took six years to resolve.)

On January 13, 2014, Plaintiff filed an appeal with the EEOC pursuant to 29 C.F.R. § 1614.403(a), asserting that the AJ had improperly decided his case without a hearing and erred in granting the Agency summary judgment. On December 8, 2016, the Commission, upon *de novo* review, affirmed the AJ's decision. It first determined that the AJ had "properly issued a

3

decision without a hearing as there are no material facts at issue." Id. at 128. Then it held that even if Harris had made out a *prima facie* case of discrimination and retaliation, the Agency had "articulated legitimate, nondiscriminatory reasons for its actions and [he] did not show that the reasons given by the Agency were pretext for discrimination." Id. at 129.

On March 3, 2017, Plaintiff timely filed this civil action, reprising the same grievances that were before the EEOC. The Agency filed a Motion for Summary Judgment on July 31, 2017. That same day, the Court issued an Order directing Harris to file any response by August 21. See ECF No. 11. Plaintiff never filed an opposition, and this Opinion issues almost a month after the Court's deadline.

**II.     Legal Standard**

Summary judgment may only be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty

4

Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-movant, in other words, is required to provide evidence that would permit a reasonable jury to find in his favor.  See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

When the non-movant fails to file an opposition, the court may not treat the motion as conceded.  See Winston & Strawn, 843 F.3d at 506.  Rather, "a district court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment."  Id. (quoting Grimes v. Dist. of Columbia, 794 F.3d 83, 97 (D.C. Cir. 2015)).  In doing so, the court may, however, accept the moving party's uncontested assertions of fact as true.  See Fed. R. Civ. P. 56(e)(2).

## III. Analysis

Harris asserts in this action that: (1) he was subject to sex discrimination because women did not have to wash pots and pans as often as men; (2) the Agency retaliated against him by making him perform unpleasant cleaning duties alone; and (3) the AJ made a final decision without giving him the opportunity for a hearing.  He also alleges that the Agency failed to promote him, though it is unclear whether this contention relates to his discrimination or retaliation count.  The Court addresses each claim in turn.

5

A. Discrimination

Title VII prohibits an employer from discriminating against an employee because of his sex. See 42 U.S.C. § 2000e-2(a). To prevail on such a claim, a plaintiff must follow the three-part burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Under this framework, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. "If the plaintiff meets this burden, '[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its action. If the employer succeeds, then the plaintiff must 'be afforded a fair opportunity to show that [the employer's] stated reason . . . was in fact pretext' for unlawful discrimination." Chappell-Johnson v. Powell, 440 F.3d 484, 487 (D.C. Cir. 2006) (quoting McDonnell Douglas, 411 U.S. at 802, 804). When, however, "an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not — and should not — decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). The Court's sole task in such cases is to "resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" Id. If so, to defeat summary judgment the plaintiff must "present[] enough evidence to allow a reasonable trier of fact to conclude that the employer's proffered explanation is unworthy of credence." Desmond v. Mukasey, 530 F.3d 944, 962 (D.C. Cir. 2008) (internal quotation marks and citation omitted).

Here, Plaintiff's discrimination claim gets stuck at the starting block. Even under the streamlined <u>Brady</u> inquiry, the employee must have "suffered an adverse employment action," 520 F.3d at 494, defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." <u>Douglas v. Donovan</u>, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting <u>Taylor v. Small</u>, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). Harris's discrimination claim is based on being tasked with scrubbing pots and pans, a duty that is part of his job description. Employees assigned to the dishwashing unit scrape food from plates, sort and store dishes, clean floors, and "wash[] pots and pans." AR at 36. Plaintiff does not provide any evidence to suggest that his dishwashing assignments, which are part of his assigned duties, fall under the definition of an adverse action. See <u>Slate v. Pub. Def. Serv. for Dist. of Columbia</u>, 31 F. Supp. 3d 277, 296 (D.D.C. 2014) (plaintiff did not suffer adverse employment action when assigned to do dangerous and undesirable tasks that were part of employment responsibilities). "[N]ot everything that makes an employee unhappy is an actionable adverse action." <u>Russell v. Principi</u>, 257 F.3d 815, 818 (D.C. Cir. 2001) (citation omitted).

Even assuming Plaintiff could allege an adverse action by claiming that his job duties were significantly more onerous than others similarly situated, he has not put forth any evidence that the Agency's non-discriminatory explanation for the gender disparity was pretextual. Of the employees whose job duties included washing pots and pans and who were able to do so, 29 were men and 3 were women. See AR at 83. Statistically, therefore, if the assignments were doled out without regard to gender, men would be assigned to wash pots and pans almost 10 times more often than women. Harris would thus have to show that the ratio of actual dishwashing was greater than 10:1. This he never even attempts. In fact, he concedes that

women do sometimes wash pots and pans. Id. at 40 (Informal EEO Complaint) ("[F]emale employees . . . have only work [*sic*] or have been scheduled to [wash pots and pans] maybe 5 or 6 times, that I have witnessed."). He has not provided any evidence whatsoever that the Agency's reason explaining why there are more men than women washing pots and pans is pretextual. The Court, therefore, grants Defendant summary judgment on the discrimination claim.

    B. Retaliation

Harris next argues that the Agency retaliated against him for complaining about the gender disparity in dishwashing duty. His retaliation claim rests on acts that differ from those in his discrimination count. He alleges that his supervisors gave him specific retaliatory work assignments, including cleaning the "grease bucket room and mainly clean up . . . while other employees sit around and watch [him] work," Compl. at 2-3, and being sent alone to clean the nursing home. See AR at 40. The Agency counters that these cannot "qualify as adverse actions because his job description requires him to perform the exact cleaning duties he was assigned to do." Def. MSJ at 13; AR at 38 (detailing WG-1 position description as including "perform[ing] cleaning tasks in the food service area such as sweeping and mopping Kitchen floors . . . and cleaning and sanitizing trash cans"). Alternatively, Defendant presents as a non-discriminatory explanation for Plaintiff's assignments that the hospital at the time was subject to surveys that required extra cleaning. The Court need not assess either of these positions, as the Agency prevails on a more fundamental point.

Because the VA has put forth a non-retaliatory reason for Harris's work assignments, to defeat summary judgment he must establish <u>both</u> that the proffered reason is pretextual <u>and</u> that the employer intentionally retaliated against the employee. See Adeyemi v. Dist. of Columbia,

8

525 F.3d 1222, 1226 (D.C. Cir. 2008); Walker v. Johnson, 798 F.3d 1085, 1093 (D.C. Cir. 2015) (holding plaintiff must show "that a reasonable jury could not only disbelieve the employer's reasons, but conclude that the real reason the employer took a challenged action was a prohibited one"). Under this standard, a court must consider whether the plaintiff has presented sufficient evidence of retaliatory intent — including looking to his *prima facie* case. See Gray v. Foxx, 637 F. App'x 603, 607 (D.C. Cir. 2015) (holding that question of retaliation may be resolved in favor of employer "based either upon the employee's failure to rebut [the employer's] explanation or upon the employee's failure to prove an element of her case"); Czeklaski, 475 F.3d at 363 (evaluating plaintiff's *prima facie* case "not to determine whether it was properly established, but rather because [her] prima facie case is part of the evidence [the court] must consider in addressing th[e] question of whether she has created a genuine issue of gender discrimination") (internal quotation marks and citation omitted) (first and third alterations in original); Aka, 156 F.3d at 1291. Even assuming that the Agency's proffered non-discriminatory reason is pretextual, the Court finds no evidence of retaliatory intent.

To prove a *prima facie* case of retaliation, a plaintiff must establish that (1) he engaged in statutorily protected activity; (2) he was subject to an adverse personnel action; and (3) a causal nexus exists between the protected activity and the adverse action. Brown v. Brody, 199 F.3d 446, 452-53 (D.C. Cir. 1999), abrogated on other grounds by Steele v. Schafer, 535 F.3d 689 (D.C. Cir. 2008). Although Harris did engage in protected activity by filing his EEO complaint and assuming he did suffer an adverse action, he has not shown a causal link between the two. To demonstrate such a link, Harris must first establish that his supervisors knew of his EEO activity. See Morris v. McCarthy, 825 F.3d 658, 673 (D.C. Cir. 2016) (affirming district court's grant of summary judgment to defendant when plaintiff failed to "introduce[] evidence sufficient

for a reasonable jury to infer" supervisors knew of any protected activity). While the record does show some passing references to complaints Harris made to his "Chief" and ongoing EEO reports, see AR at 40-41, he nowhere indicates that his supervisors — who were responsible for the alleged retaliatory work assignments — were aware of those contacts. "[A]n employee cannot survive summary judgment if a jury can do no more than 'speculate' that her employer knew of her protected activity." Morris, 825 F.3d at 673 (citation omitted). There is, consequently, insufficient proof of retaliatory intent to warrant a trial, and the Court grants Defendant summary judgment on the retaliation claim.

    C.  Failure to Promote and Compensate

Plaintiff also cursorily alleges in his Complaint that his "civil rights have been violated" because he has "trained all new incoming employees," and those employees have been promoted to WG-2 work, while he remains a part-time WG-1 worker. See Compl. at 4. He similarly alleges that he does the work of a WG-2 or WG-3 employee without being compensated. Id. It is not clear from the Complaint whether these are meant to be a part of his discrimination or retaliation count, but the claim fails under either. Harris provides no details of the who, what, or when of any these promotions. Nor is there any evidence that anyone involved in such decisions knew of Harris's protected activity. Without these particulars, the Court is unable to assess the viability of his failure-to-promote allegation. See Bowden v. Clough, 658 F. Supp. 2d 61, 88-89 (D.D.C. 2009) (granting defendant summary judgment when plaintiff alleged failure to promote and compensate but did not provide evidence or details to substantiate claim). As to Plaintiff's compensation claim, the WG-1 position description states that such workers may be assigned to "higher graded duties to fill in for employees on leave, to cover vacancies or for cross-training purposes." AR 36. Again, Harris did not provide any evidence or explanation that would allow

the Court to divine a discrimination or retaliation claim from the Agency's managerial decisions that follow the position description. See Bowden, 658 F. Supp. 2d at 88-89.

### D. Administrative Hearing

The Court last turns to Plaintiff's claim that he was improperly denied a hearing before the AJ. On this count, again, Defendant prevails. Although Harris does not assert a specific cause of action, his claim that the AJ erred when she "made a final decision without [Plaintiff's] being heard with material of facts to the issues [*sic*]," Compl. at 5, finds no basis in fact or law.

In this case, Defendant filed a motion requesting that the AJ grant summary judgment without a hearing. See AR at 79-80. Although he was given time to respond, Plaintiff declined to do so. Id. at 79. Noting Harris's lack of opposition, the AJ reviewed the record and granted the VA's request. Id. at 79, 85. This was entirely within the relevant regulations, which provide that an AJ may "issue a decision without a hearing" after determining that there is no genuine issue as to any material fact. See 29 C.F.R. § 1614.109(g).

To the extent that Harris is attempting to challenge the administrative processing of his EEO complaint, his claim is not cognizable under federal anti-discrimination law. Title VII "provides a former employee with a remedy only against his or her employer" and creates no "independent cause of action against the EEOC for its investigation and processing of a charge." Young v. Sullivan, 733 F. Supp. 131, 132 (D.D.C. 1990), aff'd, 946 F.2d 1568 (D.C. Cir. 1991); Bolden v. Ashcroft, No. 03-1030, 2005 WL 1903567, at *2 (D.D.C. July 15, 2005) (finding that plaintiff's "dissatisfaction with the EEO administrative process does not provide the basis for . . . a federal claim of discrimination"). The statute thus provides no vehicle for Plaintiff's grievances against the EEOC.

Even construing Harris's Complaint liberally, and out of an abundance of caution, the Court addresses the possibility that Plaintiff is attempting to allege that the EEOC's administrative process violated the APA or the Fifth Amendment's Due Process Clause. This requires very little discussion, as neither provision provides a viable basis for Harris's claim. Because EEOC determinations are both non-final and non-binding, courts have held that they may not be challenged under the Administrative Procedure Act or the Due Process Clause. See Wright v. Dominguez, No. 04-5055, 2004 WL 1636961, at *1 (D.C. Cir. July 21, 2004) (finding no cause of action under APA to challenge EEOC's administrative process); Georator Corp. v. EEOC, 592 F.2d 765, 768-769 (4th Cir. 1979) (finding no cause of action to challenge EEOC determinations under APA or Fifth Amendment); Francis-Sobel v. Univ. of Maine, 597 F.2d 15, 18 (1st Cir. 1979) (finding no implied right of action in Fifth Amendment to challenge EEOC proceedings); Seneca v. Price, No. 17-181, 2017 WL 2787601, at *3 (D.D.C. June 27, 2017) (rejecting challenge to EEOC administrative process under APA). This Court agrees. Even generously interpreted, Harris's dissatisfaction lacks a cause of action. The Court will therefore dismiss Plaintiff's third count and grant summary judgment in favor of Defendant.

**IV.    Conclusion**

Every job includes some unsavory responsibilities, but Title VII was not enacted as a tool for courts to micromanage personnel decisions. No reasonable jury could, on this record, find that Plaintiff's assignments and WG-1 status were due to discrimination or retaliation. Neither has Plaintiff alleged a cause of action with regard to his administrative claim. The Court,

12

accordingly, will grant Defendant's Motion for Summary Judgment. A separate Order consistent with this Opinion will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 19, 2017